IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELPIDIO ZAMORA,

      Plaintiff,                                 No. CIV S-06-2347 DAD

      v.

MICHAEL J. ASTRUE,                   <u>ORDER</u>
Commissioner of Social Security,[1]

      Defendant.
_____/

        This social security action was submitted, without oral argument, for ruling on plaintiff's motion for summary judgment or remand and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion for remand is granted, the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

        On April 1, 2004, plaintiff applied for disability benefits under Title II of the Social Security Act, alleging onset of disability on January 23, 2002. (Transcript (Tr.) at 49-52.) Plaintiff's application was denied initially on May 27, 2004 and upon reconsideration on

---

[1] Michael J. Astrue has been substituted for Jo Anne B. Barnhart as defendant in this suit pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

1

September 29, 2004. (Tr. at 33-46.) Pursuant to plaintiff's request received on October 26, 2004, a hearing was held before an administrative law judge (ALJ) on September 15, 2005, at which plaintiff was represented by counsel and testified through a Spanish interpreter. (Tr. at 47-48, 275-303.)

In a decision issued on December 16, 2005, ALJ Mark C. Ramsey denied plaintiff's claim for benefits. (Tr. at 13-24.) The ALJ entered the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's crush injury to the left upper extremity and resulting sympathetic dystrophy, complex regional pain syndrome, and bilateral shoulder strains are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: light work that does not require any use of the left upper extremity and does not require climbing ramps or stairs more than occasionally, and which requires no climbing of ladders, ropes, or scaffolds.

7. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

9. The claimant is "unable to communicate in English" (20 CFR § 404.1564).

10. Transferability of skills is not an issue in this case (20 CFR § 404.1568).

| | | |
|---|---|---|
| 1 | 11. | The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567). |
| 2 | | |
| 3 | 12. | Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.16 and 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as school bus monitor, barker, host, surveillance system monitor, and chaperone (Exhibits 4E, 6E). |
| 7 | 13. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(g)). |

(Tr. at 23-24.)

Plaintiff requested review of the ALJ's decision on February 9, 2006. (Tr. at 259-63.) The Appeals Council denied the request for review on August 25, 2006. (Tr. at 5-7.) Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on October 24, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d

3

at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations. Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process can be summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. If the sequential evaluation process proceeds to step five, the Commissioner bears the burden at the final step. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances three arguments in his motion for summary judgment. First, he asserts that he is limited to sedentary work and thus is disabled pursuant to Medical Vocational Rule 201.17. Second, he contends that his condition equals Medical Listing 1.07. Third, he argues that he is limited to less than a full range of light work and therefore vocational testimony was required in order to determine whether work exists in the national economy that he can perform. Each of plaintiff's arguments is addressed below, although not in the order presented by plaintiff.

**I. Step Three: Whether Plaintiff's Condition Equals Listing 1.07**

Plaintiff contends that his condition equals Medical Listing 1.07 because his impairment is equivalent in severity to the impairment discussed in the listing.

At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The Listing of Impairments sets out more than one hundred physical and mental illnesses and abnormalities severe enough to prevent an adult individual from engaging in any gainful activity, regardless of the individual's age, education, or work experience. 20 C.F.R. § 404.1525(a); Sullivan v. Zebley, 493 U.S. 521, 530 & n.6 (1990).

The claimant bears the burden of establishing a prima facie case of disability under the Listing of Impairments. Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan, 493 U.S. at 530. An impairment not listed in Appendix 1 may be found medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment,

he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan, 493 U.S. at 531. A claimant cannot qualify for benefits on the basis of equivalence merely by showing that the overall functional impact of his impairment or combination of impairments is as severe as the overall functional impact of a listed impairment. Id. Put another way, "[t]he functional consequences of the impairments[,] . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence." Id. at 532 (quoting Social Security Ruling (SSR) 83-19).

Here, plaintiff contends that he meets the criteria of Listing 1.07, which describes one of seven listed impairments in the musculoskeletal category.

> *Fracture of an upper extremity* with non-union of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.07. Functional loss for purposes of all seven listed musculoskeletal impairments is defined as (1) inability to ambulate effectively on a sustained basis or (2) inability to perform fine and gross movements effectively on a sustained basis, either of which must have lasted or be expected to last at least twelve months. Id. at § 1.00B2a. Inability to perform fine and gross movements effectively means

> an extreme loss of function of both upper extremities, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

Id. at § 1.00B2c. If a claimant's musculoskeletal impairment has a level of severity that does not meet or equal these criteria, the evaluation of the impairment should proceed through the final

steps of the sequential evaluation process to determine whether the claimant has a residual functional capacity to engage in substantial gainful activity. Id. at § 1.00H4.

Here, the ALJ found, after examining the medical records and considering the hearing testimony, that plaintiff's severe impairments consist of a crush injury to his left upper extremity and resulting reflex sympathetic dystrophy, complex regional pain syndrome, and bilateral shoulder strains. (Tr. at 16-20.) The ALJ decided that these severe impairments are not severe enough to meet or medically equal, either singly or in combination, any impairment listed in Appendix 1. (Tr. at 20, 23.) The ALJ specifically addressed Listings 1.04 (disorders of the spine) and 1.02B (major dysfunction of one major peripheral joint in each upper extremity) and ruled that plaintiff's impairments did not meet or equal them.[2] (Tr. at 20.)

In support of a finding of disability based on Listing 1.07, plaintiff describes the industrial accident in which his left hand and forearm were pulled into a conveyor and crushed, the length of time it took to reach the appropriate hospital, the resulting death of tissue and diagnosis of compartment syndrome, the multiple surgeries performed within the week after the injury, the development of reflex sympathetic dystrophy and complex regional pain syndrome, and the fact that he never regained full use of his left arm. (Pl.'s Mot. for Summ. J. at 11 (citing tr. at 103, 111, 109).) Plaintiff concedes that surgical procedures have not been performed on him since those that were performed soon after the accident, but he asserts that he has been under a doctor's care since that time and that his doctors have attempted a variety of treatments, none of which has been successful in returning his arm to full functionality, leaving him with reflex

---

[2] Prior to the hearing that was originally set for June 30, 2005, plaintiff's counsel in the administrative proceedings submitted a brief in which he argued that plaintiff should be classified disabled under "Listing of Impairment 1.02(B), Major dysfunction of a joint(s), due to Mr. Zamora's injuries to his left shoulder, arm, and hand." (Tr. at 100.) The ALJ rejected plaintiff's argument regarding Listing 1.02B on the erroneous ground that "this is a listing for rheumatoid arthritis, and the record fails to establish that the claimant has a rheumatoid type disorder." (Tr. at 20.) Listing 1.02B contains no mention of rheumatoid arthritis. Plaintiff's brief to the Appeals Council did not challenge the ALJ's findings regarding listed impairments. (Tr. at 260). Plaintiff now seeks a finding of disability based only on Listing 1.07.

sympathetic dystrophy secondary to the crush injury.  Plaintiff argues that the injuries to his left arm, combined with his reflex sympathetic dystrophy, have made his left arm entirely nonfunctional, and, despite surgeries, physical therapy, and pain medication, he still has no use of his left upper extremity.  These circumstances, plaintiff contends, render his injury equal in severity to that contemplated by Listing 1.07.

Defendant argues that plaintiff did not have any fracture and has not met the criteria for a listing that requires extreme loss of function of both upper extremities.  Defendant contends that the medical evidence and hearing testimony do not support plaintiff's equivalence theory.  In this regard, defendant points to the following evidence:  Dr. McCall released plaintiff back to work with a modified work schedule, Drs. McCall and Osgood found plaintiff eligible for vocational rehabilitation, Dr. McCall never totally restricted plaintiff's use of his left arm but merely limited such use to ten minutes per hour, plaintiff admits to going to the gym two or three times a week, where he lifts two to five pound weights, and Dr. McCall encouraged plaintiff to continue going to physical therapy and the gym.  (Def.'s Cross-Mot. for Summ. J. at 9 (citing tr. at 115, 120, 172-79, 191-93, 206, 214-15).)

The court finds that plaintiff has failed to demonstrate satisfaction of all of the medical criteria specified for Listing 1.07.  Plaintiff has not shown that his combination of impairments is medically equivalent to an extreme loss of function of both upper extremities such that his impairments interfere very seriously with his ability to independently initiate, sustain, or complete activities.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.07B2c.  While the overall impact of all of plaintiff's impairments may approach the severity of the overall functional impact of the impairment listed as 1.07, plaintiff has not met his burden of showing the required equivalence.  This conclusion at step three of the sequential evaluation process does not rule out a finding of disability but simply means that the evaluation of plaintiff's combination of impairments must proceed through the remaining steps to determine whether he has a residual functional capacity to engage in substantial gainful activity.

**II. Step Five: Whether There Is Other Work Plaintiff Can Perform**

At the fifth step of the sequential evaluation process, the Commissioner may satisfy his burden of showing that the claimant can perform other types of work in the national economy, given the claimant's age, education, and work experience, by either (1) applying the Medical-Vocational Guidelines, commonly referred to as the "grids," in appropriate circumstances, or (2) taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340 (citing Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988)); Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

"The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart, 856 F.2d at 1340. The grids reflect "major functional and vocational patterns" and incorporate the analysis of critical vocational factors, i.e., age, education, and work experience, in combination with the individual's residual functional capacity. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). The grids may be utilized only when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998). See also Reddick v. Chater, 157 F.3d 715, 729 (9th Cir. 1998).

**A. Application of Medical Vocational Rule 201.17**

Plaintiff contends that Rule 201.17 of the Medical-Vocational Guidelines applies to him because he is limited to sedentary work, is between the ages of 45 and 49, is illiterate or unable to communicate in English, and either has no past relevant work or his past relevant work experience was in occupations that must be treated as unskilled. Defendant argues that plaintiff does not meet any of the criteria of Rule 201.17 of the Medical-Vocational Guidelines.

The series of rules found in § 201.00 of Appendix 2 apply to persons whose maximum sustained work capability is limited to sedentary work as a result of a severe medically determinable impairment or impairments. 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 201.00. Rule 201.17 applies to a "[y]ounger individual age 45-49" who is "[i]lliterate or unable to

communicate in English" and whose previous work experience is "[u]nskilled or none." 20 C.F.R., Pt. 404, Subpt. P, App. 2, Table No. 1, Rule 201.17.

Although defendant contends that "[p]laintiff meets none of the requisite criteria of Rule 201.17," the ALJ himself determined that plaintiff is "unable to communicate in English." (Tr. at 22, 24.) In addition, plaintiff meets the work experience requirement as a matter of law. In a case in which Rule 201.17 was one of several grid rules at issue, the Ninth Circuit determined that the rules are ambiguous with regard to the work experience requirement in several instances and held unequivocally that "in applying the grid rules the Commissioner must treat a skilled or semi-skilled work history with no transferable skills as equivalent to an unskilled work history." Silveira v. Apfel, 204 F.3d 1257, 1260-61 (9th Cir. 2000). Here, plaintiff's work history includes janitor and sawmill laborer, occupations that are classified by the Dictionary of Occupational Titles as skilled or semi-skilled. Under the holding in Silveira, plaintiff's skilled or semi-skilled work experience must be treated as equivalent to an unskilled history because the ALJ determined that plaintiff is unable to perform any past relevant work and has no transferable skills. (Tr. at 22-24, 77, 86.)

However, the fact that he meets two of the Rule 201.17 criteria is unavailing to plaintiff because he cannot meet at least one of the remaining criteria. Plaintiff was born on July 18, 1961. (Tr. at 49.) Thus, he was 40 on January 23, 2002 when he was injured in the industrial accident, he was 42 on April 1, 2004 when he applied for disability benefits, and he was 44 on September 15, 2005 when the administrative hearing was held. Most importantly, his age was 44 years and slightly less than 5 months on December 16, 2005, when the ALJ issued his decision.

The Secretary's regulations provide that age categories will not be applied mechanically "in a borderline situation." 20 C.F.R. § 404.1563(b). If a claimant is "within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled," use of the older age category will be considered after evaluating the overall impact of all the factors of the case. Id.

1    The Ninth Circuit has recognized that line drawing with respect to age is both reasonable and necessary in Social Security cases. Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988). In Russell, the court was also called upon to interpret the phrase "a borderline situation" and to decide the point in time at which age is determined for purposes of judicial review. The Russell claimant was 59 years and 5 months old, i.e., seven months short of 60, but he argued that he had reached 60 years and 2 months before the Appeals Council rendered its decision. Id. The Ninth Circuit ruled that when the Appeals Council denies review and does not issue a decision of its own, the ALJ's decision is the final decision for purposes of judicial review and the claimant's age on the date of the ALJ's decision is determinative. Id. at 83-84. The Russell court held that the case did not present a borderline situation, as the claimant was closer to age 59 than to age 60. Id. at 84.

In the present case, plaintiff, at age 44 years and almost 5 months on December 16, 2005, was closer to 44 than to 45 when the ALJ issued what became the final decision in this case. As in Russell, plaintiff's situation cannot be considered borderline, and, as the ALJ indicated both at the hearing and in his written decision, plaintiff was not a "[y]ounger individual age 45-49" for purposes of Rule 201.17. (Tr. at 299-300, 22-24.)

Although plaintiff met some of the criteria for Rule 201.17 at the time of the final decision in this case, he did not meet all of them. Therefore, Rule 201.17 did not apply at the relevant time, and plaintiff is not entitled to a finding of disability pursuant to Rule 201.17.

**B. Vocational Testimony**

Plaintiff contends that the ALJ was required to take vocational testimony in order to determine whether work exists in the national economy that he can perform. The court agrees.

"When a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . . In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities." Burkhart, 856 F.2d at 1340

(quoting Desrosiers, 846 F.2d at 578, and citing Jones, 760 F.2d at 998). See also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983); Tackett, 180 F.3d at 1101-02.

Here, the ALJ determined that plaintiff has the residual functional capacity to perform "a significant range of light work" but acknowledged that plaintiff's ability to perform the requirements of such work "is impeded by additional exertional and/or non-exertional limitations." (Tr. at 22.) The ALJ then applied Rules 202.16 and 202.18 as a framework for decisionmaking with regard to plaintiff's ability to perform other types of work. (Id. at 22-23.) Both rules apply to claimants whose residual functional capacity is limited to light work as a result of severe medically determinable impairments. Rule 202.16 leads to a decision of not disabled for a younger individual who is illiterate or unable to communicate in English and whose previous work experience is unskilled or none. Rule 202.18 leads to a decision of not disabled for a younger individual whose education is limited or less and whose previous work experience is skilled or semiskilled, with no transferable skills.

The rules relied upon by the ALJ as a framework for decisionmaking do not accurately and completely describe plaintiff's abilities and limitations because those rules do not take into account the significant nonexertional limitations found to exist in plaintiff's case by the ALJ, including the severe pain caused by the injury to plaintiff's left arm and resulting reflex sympathetic dystrophy, his regional pain syndrome, and his bilateral shoulder strains. Vocational testimony was therefore necessary. The ALJ elected to rely on a form completed by an vocational analyst on May 24, 2004 and another form partially completed by an unknown person on an unknown date.[3] (Tr. at 22, 76-78, 86.) The forms relied upon by the ALJ do not reflect

---

[3] The latter form (see tr. at 86), is unsigned and undated. It is marked "Exhibit 6E (1 of 2)." The second page of the exhibit is missing from the transcript lodged with the court, and the consecutive page numbering of that record skips from 86 to 88. Presumably, the attachment consists of information about jobs as a surveillance system monitor and chaperone, since the ALJ referred to those jobs and cited Exhibit 4 (which provided information only about jobs as school bus monitor, barker, and host) and Exhibit 6, the first page of which provides no information about any jobs.

any consideration of plaintiff's nonexertional limitations. Moreover, the forms were prepared at an earlier stage of the administrative process and therefore could not have applied the limitations imposed by the ALJ on plaintiff's residual functional capacity: i.e., light work that does not require any use of the left upper extremity, does not require climbing ramps or stairs more than occasionally, and requires no climbing of ladders, ropes, or scaffolds.

Plaintiff asserts that the ALJ also failed to consider SSR 03-2p, which explains the policies of the Social Security Administration for evaluating claims based on reflex sympathetic dystrophy syndrome and complex regional pain system, which are among plaintiff's severe impairments as found by the ALJ. SSR 03-2p explains that reflex sympathetic dystrophy syndrome and complex regional pain system are synonymous terms for a clinical syndrome that may develop following trauma to a single extremity, a syndrome that is characterized by complaints of intense pain. SSR 03-2p, 2003 WL 22399117, at *1 (2003). "It is characteristic of the syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual, and if untreated the signs and symptoms of the disorder may worsen over time. Id. at *1. It is believed that the nervous system may produce inappropriate or exaggerated neural signals that may be misinterpreted by the body as pain but may also produce changes in blood vessels, skin, musculature, and bone that are painful. Id. at *2. The signs and symptoms may spread so that pain intensifies and involves other extremities, and the symptoms may last for years. Id. "Careful consideration must be given to the effects of pain and its treatment on an individual's capacity to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Id. at *7. "[T]he adjudicator must make every reasonable effort to obtain additional information that could shed light on the credibility of the individual's statements." Id. at *8. The ALJ did not make such an effort and instead improperly discounted plaintiff's testimony concerning pain.

Plaintiff also cites SSR 83-12, which notes that persons who have lost the use of an upper extremity may be able to perform some jobs at nearly every exertional level but

generally have a potential occupational base between sedentary work and light work, so that the total number of occupations within such an individual's residual functional capacity is less than the number represented by a full or even a wide range of light work. SSR S.S.R. 83-12, 1983 WL 31253 (1983). The ruling provides that where a claimant's exertional limitations are

> somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [vocational expert] assistance is advisable for these types of cases.

Id., at *2. This rule also addresses the special situation of loss of use of an upper extremity and concludes that a vocational expert is needed to (1) determine the size of the occupational bases that remains in this situation, (2) cite specific jobs within the individual's residual functional capacity, and (3) provide a statement of the incidence of those jobs in the region of the individual's residence or in several regions in the country. Id., at *4.

In this case the ALJ attempted to avoid the simple task of hearing testimony from a vocational expert by relying on forms prepared prior to the ALJ's determination of the extent of plaintiff's severe impairments and the restrictions those impairments had on plaintiff's residual functional capacity. As asserted by plaintiff, the jobs suggested by administrative staff and cited by the ALJ do not appear to be jobs that can be performed without any use of the left upper extremity and do not reflect any consideration of plaintiff's nonexertional limitations, in particular the level of pain he suffers or his inability to communicate in English. The ALJ did not rely on strong and substantial evidence in concluding that there are a significant number of jobs in the national economy that plaintiff can perform.

**CONCLUSION**

There is substantial evidence in the record that plaintiff's nonexertional impairments significantly diminish his ability to work. On remand, the ALJ must take testimony from a vocational expert regarding types of work that plaintiff can obtain and perform, and the number of such jobs that exist in the economy. See Holohan v. Massanari, 246 F.3d 1195, 1208-

09 (9th Cir. 2001); Stewart v. Sullivan, 881 F.2d 740, 744 n.5 (9th Cir. 1989). The ALJ must also properly consider plaintiff's pain and its effects. See SSR 03-2p, 2003 WL 22399117, at *7-8 (2003); Zappia v. Astrue, No. 08-3107, 2009 WL 424561, at *6 (C.D. Ill. Feb. 19, 2009)

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for remand (Doc. No. 18) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 21) is denied; and

3. The decision of the Commissioner of Social Security is reversed, and the case is remanded for rehearing consistent with the analysis set forth herein. See 42 U.S.C. § 405(g), Sentence Four.

DATED: March 9, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/zamora2347.ord